9-29-05 GHO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

ERIC LAQUINNE BROWN                            PLAINTIFF

v.                                                                      No. 3:02CV12-D-A

ROBERT G. SUDDUTH, ET AL.                     DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the November 24, 2004, motion by Robert Sudduth and Mike McGowan ("Municipal Defendants") for summary judgment. The plaintiff responded December 16, 2004. The remaining defendants joined the motion June 23, 2005. The matter is ripe for resolution. For the reasons set forth below, the instant case shall be dismissed for failure to state a claim upon which relief could be granted.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th

Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### The Plaintiff's Claims

Brown claims that the defendants arrested him without probable cause, warrant, or due process – and conspired together to do so. He seeks $2,000,000.00 from each defendant in compensatory damages, $5,000,000.00 collectively in punitive damages, as well as court costs and attorneys fees.

## Undisputed Material Facts[1]

The Pontotoc Police Department received a phone call from the Memphis Police Department just after 6:00 a.m on January 23, 1999. From this phone call, investigator Robert Sudduth ("Sudduth") learned that a black female wearing a McDonald's uniform had been murdered and her body discovered in Memphis. Her body was found in a car; both had been burned. Investigators found a license plate nearby registered in Pontotoc County, Mississippi, to Shorelonda Moore ("Moore"). Moore worked a McDonald's in Pontotoc, and the body matched Moore's description. Moore's mother was notified, and she traveled to Memphis to identify her daughter's body.

Law enforcement officers in Pontotoc County were familiar with Moore, as she had been involved in many domestic disputes with Eric LaQuinne Brown ("Brown") and Tennille Brown ("Tennille"), whom Brown had married only a few days before the murder. Brown had lived alternately with Moore and Tennille, and each woman had borne Brown a child. Indeed, Moore was pregnant with a second of Brown's children at the time of her murder. A number of domestic disputes among the three required police intervention, and several criminal complaints had arisen out of the love triangle, as well.

Sudduth began investigating the homicide immediately. He spoke first to the day shift manager at McDonald's, Moore's place of employment. The manager told Sudduth about various arguments and domestic disputes between Moore and Brown, who had called Moore at

---

[1]While the defendants may well dispute Eric Brown's version of the facts, for the purposes of this memorandum opinion only, the court shall take as true the Brown's allegations as to the events from the time Investigator Sudduth took charge at the scene of the arrest until he arrived at the police station, as the defendants did not present any facts regarding this time period in their motion for summary judgment.

work two or three times the day she was murdered. Further, Moore planned to meet Brown after work that day. Sudduth also spoke with Moore's good friend, who told police that Moore had arranged for the friend to keep Moore's child the weekend of the murder so that Moore could go out of town with Brown. Sudduth also went to Brown's apartment and spoke to his neighbor, who informed police that she did not believe Brown or his wife Tennille were home the night of the murder. Tennille, however, had borrowed the neighbor's phone several days before the murder to call Moore. During this call, Tennille threatened Moore, cursed at her, and warned her to stay away from Brown. Then Tennille told the neighbor she wished Moore would die.

At 1:47 p.m. on January 23, 1999, Russell Perry ("Perry"), an officer with the Pontotoc Police Department, passed a beige GMC Jimmy truck on West Oxford Street in Pontotoc. Perry noticed in his rearview mirror that truck did not have a license plate, so he turned around, moved behind the truck, and turned on his blue lights. The truck stopped, and a black man exited, asking, "What is the problem?" A woman and three children were in the truck with the man. Perry ordered the man back into the truck, but the man again asked, "What is the problem?" After Perry ordered him back into the truck a second time, the man complied. Perry approached the driver's side door and asked for the man's driver's license. He also told the man the reason for the stop, that the truck did not have a license plate. The man stated that the plate had been stolen the night before and that he had a tag receipt to prove that he had obtained a plate. Perry issued the man a citation for failing to display his license plate. At this point, Perry realized that he had pulled over Eric L. Brown, the man Investigator Sudduth was seeking in his murder investigation. Perry called Sudduth and others to the scene; five or six police cruisers arrived in short order, and Sudduth took over.

Officer Long approached with his hand on his sidearm and asked Brown to accompany law enforcement personnel to the police station. Brown asked if he was under arrest, and Long said no. Another officer then approached, hand on sidearm, and asked Brown if he would go to the police station. Again, Brown asked if he was under arrest. Again, the officer said no. Brown decided to accompany the police to the station when Sheriff Daniels approached, with his hand on his sidearm, and told Brown to follow Daniels to the police station for questioning. Brown complied.

Once at the station, an officer read Brown and Tennille their *Miranda* rights and asked where they had been the night before. Brown's version of the events of the night of the murder conflicted with Tennille's version. Both stated, however, that they had visited Gerald Edwards in Tupelo, Mississippi the previous night.

Still on January 23, 1999, Sudduth accompanied two police officers to question Gerald Edwards; he, however, stated that he had not seen Brown in three weeks. He told Sudduth to speak to Christopher Carter about the matter. Carter told the police that on January 2, 1999, Brown had asked Carter to kill Moore because she was "always up in his business" and was pregnant again – and she kept getting him into trouble and "signing papers on him." Brown asked Carter how much he would charge to "knock her off." Carter told Brown that he "must have been watching too much T.V. and [he] must be crazy." Carter then changed the subject. Brown, however, said that he was going to find someone to do it.

The Municipal Judge of the City of Pontotoc signed warrants for the arrest of Brown and Tennille January 26, 1999. As the investigation progressed and it became clear to Tennille that her alibi was broken; she started giving investigators more statements implicating herself and

Brown. Her February 4, 1999, statement gave officers enough information to search Brown's house, where they found his singed hair in the sink. This evidence placed Brown at the scene of Moore's burning car and body. Once Brown realized that his wife was giving the police numerous statements, he gave his own statement, in which he admitted killing Moore and traveling to Memphis to burn her car and body.

Brown pled guilty November 29, 1999, to the murder of Shorelonda Moore and manslaughter of her unborn child. Brown was represented by counsel, the Honorable James Ford, at the hearing. He was sentenced in the Circuit Court of Pontotoc County that day to life in the custody of the Mississippi Department of Corrections for the homicide; his sentence for the manslaughter conviction was twenty years. The sentences run concurrently.

## Discussion

The instant case should be dismissed for three reasons, outlined here and discussed more fully below. First, Brown, who was represented by counsel, entered a knowing and voluntary plea of guilty both to the murder and the manslaughter for which he was arrested. In doing so he waived all non-jurisdictional defects to his conviction. Second, Brown's claims are barred under the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), as a favorable ruling in this case would necessarily call into question his conviction. Third, as Brown has suffered no physical injury at the hands of the defendants, he is not entitled to money damages for mental or emotional injury in this suit under 42 U.S.C. § 1983. For these reasons, the instant complaint must be dismissed.

### Knowing and Voluntary Plea Is a Waiver of All
### Non-jurisdictional Defects to a Criminal Conviction

A guilty plea given knowingly, voluntarily, and intelligently on the advice of counsel waives all non-jurisdictional defects in a criminal case. *Hayes v. Smith*, 447 F.2d 488 (5th Cir. 1971); *North Carolina v. Alford*, 1970, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162; *Jenkins v. Beto*, 442 F.2d 655 (5th Cir. 1971); *Stephen v. Smith*, 438 F.2d 979 (5th Cir. 1971); *Askew v. Alabama*, 398 F.2d 825 (5th Cir. 1968). Brown, on the advice of counsel, pled guilty to the charges of homicide and manslaughter. The testimony at Brown's November 29, 1999, plea hearing establishes that Brown gave his plea knowingly, voluntarily, and understandingly.[2] As such, he has waived his claim that he was arrested without probable cause, and this claim shall be dismissed.

### Brown's Claims Shall Be Dismissed Under the Doctrine of
### *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)

Two lines of Fifth Circuit cases have interpreted *Heck* – those following *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) and those following *Mackey v. Dickson*, 47 F.3d 744 (5th Cir. 1995). As discussed below, the defendants are entitled to summary judgment under the analysis of *Wells*; the *Mackey* analysis does not apply to the instant case.

The Fifth Circuit in *Wells* invalidated – under a *Heck* analysis – a prisoner's claim for damages under § 1983 in which he alleged that his conviction was not supported by probable cause. The Fifth Circuit held that a finding in a § 1983 case of no probable cause for the plaintiff's arrest, "would demonstrate the invalidity of the [plaintiff's] conviction . . . ." *Id.; see*

---

[2]A copy of the plea hearing transcript is attached to this memorandum opinion as Exhibit A.

*also Sappington v. Bartee*, 195 F.3d 234 (5th Cir. 1999) (prisoner's conviction on one of the charges for which he was arrested established that probable cause existed for that arrest – thus barring under *Heck* prisoner's §1983 suit based upon want of probable cause for arrest). Brown's claims must be dismissed under the *Wells* analysis, as he was convicted of the murder and manslaughter for which he was arrested. The valid conviction – not overturned or invalidated – stands as proof of probable cause for the arrest. A finding that the defendants arrested Brown without probable cause would undermine the validity of his conviction; as such, Brown's § 1983 claims must be dismissed under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

The Fifth Circuit adopted a two-step approach to applying *Heck* in *Mackey v. Dickson*, 47 F.3d 744 (5th Cir. 1995). Under *Mackey*, the first step is to determine if the plaintiff was *tried* and convicted. *Id.* Next, the court must examine the record to determine whether evidence the prosecution presented evidence in the plaintiff's criminal trial resulting directly or indirectly from plaintiff's arrest. *Id.* If such evidence *was* presented in the underlying criminal trial, "then [the plaintiff's] section 1983 damage claims challenging the validity of his arrests would appear to undermine the validity of his conviction and hence be barred by *Heck*." *Id.* At the time the Fifth Circuit decided *Mackey*, Mackey was being held in pre-trial detention. The Fifth Circuit held, "If Mackey is tried and convicted and in his *contested* criminal case no evidence is presented resulting directly or indirectly from any of his arrests, it is difficult to see how any illegality in any of his arrests could be inconsistent with his conviction." *Id.* (emphasis added).

The Fifth Circuit thus limited the holding in *Mackey* to *contested* criminal cases. This limitation is sound, as a criminal defendant in an *uncontested* case (*i.e.*, one resulting in a guilty

plea) waives all non-jurisdictional defects in his prosecution and conviction – as discussed in the section above. Therefore, the holding in *Mackey* does not apply in this case. As Brown never faced a trial, he did not *contest* the criminal charges – he confessed them. Thus, under the only *Heck* analysis applicable to this case, Brown's claims must fail.

### The Plaintiff Suffered No Physical Injury And Thus Cannot Recover Money Damages

Finally, nowhere in the instant complaint does the Eric LaQuinne Brown allege that the defendants' actions caused him physical injury. Absent an allegation of physical injury, Brown's claims seeking monetary damages for mental and emotional injury must fail. *Geiger v Jowers*, 404 F.3d 371 (5th Cir. 2005), 42 U.S.C.A. § 1997e(e).[3] The Fifth Circuit's ruling on this issue is clear:

> We agree with the majority of the other federal circuits that have addressed this issue in holding that it is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury.

*Geiger*, 404 F.3d at 374 (internal citations omitted). As Eric LaQuinne Brown seeks only money damages, and as he has not alleged physical injury, his claims for compensatory damages must fail.

In sum, all of the plaintiff's claims are without merit and shall be dismissed with prejudice for failure to state a claim upon which relief could be granted, counting as a "strike"

---

[3] 42 U.S.C.A. § 1997e(e) states: "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

under 28 U.S.C. §§ 1915 (e)(2)(B)(i) and 1915(g). A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 29th day of September, 2005.

_____
CHIEF JUDGE